**THE LAW OFFICE OF RENÉ MYATT**

204-04 Hillside Avenue, 2nd Floor

Hollis, New York 11423

(718) 468-3588

RENÉ MYATT, ESQ. (RM-4406)

Attorneys for Sean Hill

Judgment Creditor

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

In re:                                                         Chapter 13 Case

NATHANIEL AJUNWA and REGINA AJUNWA,          Case No.: 10-15981 (SCC)

                              Debtors

-------------------------------------------------------------------X

## MOTION OF SEAN HILL TO DISMISS THE CASE OF NATHANIEL AJUNWA AND REGINA AJUNWA PURSUANT TO SECTION 1307 (c) OF THE BANKRUPTCY CODE

Sean Hill (**"HILL"**) hereby submits this motion (the **"Motion"** ), by and through his

undersigned counsel, to dismiss the Chapter 13 case filed by Nathaniel Ajunwa and Regina

Ajunwa (Chapter 13 Case No.: 10-15981 (SCC) (the **"Ajunwa Debtors"**) pursuant to Section

1307 (c) of the Bankruptcy Code and respectfully requests as follows:

### PRELIMINARY STATEMENT

1. The facts make clear that the filing of this Chapter 13 Petition was done in bad faith

   merely to evade paying a $430,000.00 judgment owed to Sean Hill.

2. Both Debtors are professional people, college graduates, and social workers. Generally,

   debtors, at their age, people very near retirement age, are more in debt than the Ajunwa

1

debtors; the Ajunwa Debtors' small debt is manageable debt. The fact that their petition shows no debt shows they have a responsibility towards paying their debts.

3. The Ajunwa Debtors are citizens of a foreign country, Nigeria, where they have families and roots.

4. Nathaniel Ajunwa and Regina Ajunwa made a choice to purchase minimum car insurance on the Mercedes Benz that was involved in the underlying motor vehicle accident. The Ajunwa Debtors are intelligent people and both are social workers. They own a two-family house. They made a conscious decision, in spite of their assets, to purchase the minimum car insurance on their vehicle; it was calculated strategy on their part.

5. The Ajunwa Debtors' own records show how well they manage their affairs even in these extremely fiscal times. The Ajunwa Debtors are responsible people doing something responsible with their money; that is evident based on the virtual small debt in their petition. Even if one were to accept the $330,000.00 appraisal value of their two-family home, questions still abound: where is the rent roll going? Where do their paychecks go? They share this two-family home with other family members, certainly with the thought that any money coming in from rental income pays off the mortgage. They earn $90,000.00 jointly (although the $9,000.00 they bring home monthly as they testified to at the Creditors Meeting amounts to $108,000.00); where does that income go? They are not paying off a car note; and if there is indeed no property overseas, then where is their income going?

6. It is crystal clear the Ajunwa Debtors are abusing the system. When someone drives a Mercedes Benz with a $25,000.00 insurance policy it is a gamble - - a gamble these Ajunwa Debtors lost; and this bankruptcy filing is yet another gamble.

7. The Ajunwa Debtors' Chapter 13 case must be dismissed because it was not filed in good faith. At the time the Ajunwa Debtors filed their case they were current on all of their obligations and were not experiencing any imminent financial problems. By their own admission the Ajunwa Debtors earn $9,000.00 per month in net income. **See Exhibit "A" (Copy of Transcript from Creditors' Meeting dated, December 9, 2010, p. 13 ll. 6 - 9)** Using the Ajunwa Debtors' numbers, their applicable median family income is $82,164.00. This information is available by family size at *www.usdoj.gov/ust*. The Ajunwa Debtors' family income of $108,000.00 a year puts them well over the applicable median family income; thus the Ajunwa Debtors are not entitled to bankruptcy protection.

8. The outstanding debts are miniscule at best. The Ajunwa Debtors were not in default on any of their credit cards or loans prior to the commencement of their Chapter 13 case. The Ajunwa Debtors made no attempt to approach any of their credit card creditors or lenders about refinancing or extension of the loans, prior to the Chapter 13 filing, which bespeaks of the Ajunwa Debtors being financially responsible and therefore in no need of bankruptcy protection. Accordingly, there was no need for the Ajunwa Debtors to file for relief under Chapter 13 of the Bankruptcy Code; the petitions were filed solely due to the $430,000.00 personal injury judgment against the Ajunwa Debtors.

9. The Ajunwa Debtors' Chapter 13 case must also be dismissed because other than Sean Hill, it is highly unlikely that there are any other significant creditors. Any plan offered by the Ajunwa Debtors would have to overcome Mr. Hill's objections.

10. Accordingly, it is clear that the petition of the Ajunwa Debtors was not filed with any adjustment purpose; the case was filed as a tactical step in connection with the

$430,000.00 personal injury judgment against the Ajunwa Debtors and with the purpose of securing a tactical advantage in not satisfying the Ajunwa Debtors' financial obligation to Mr. Hill. For the reasons discussed in this Motion, the Court should dismiss the Chapter 13 case of the Ajunwa Debtors.

## JURISDICTION

11. This Court has jurisdiction over the Motion under 28 U.S.C. §§ 157 and 1334. Consideration of this Motion is a core proceeding pursuant to 28 U.S.C. §§ 157 (b) (2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief requested is section 1307 (c) of the Bankruptcy Code.

## BAKGROUND

**A. The Ajunwa Debtors Chapter 13 Filing is an Avoidance Tactic**

12. On November 9, 2010 (the "Petition Date"), Nathaniel Ajunwa and Regina Ajunwa filed a voluntary joint petition under Chapter 13 of the Bankruptcy Code.

13. The Ajunwa Debtors are professional people, college graduates, and social workers. Generally, debtors, at their age, people very near retirement age, are more in debt than the instant Debtors; their small debt is manageable debt. The fact that their petition shows no debt shows that they are managing their money responsibly and are in no need of bankruptcy protection.

14. Both Debtors are citizens of another country, where they have families and roots.

15. Nathaniel Ajunwa and Regina Ajunwa made a choice to purchase minimum car insurance on the vehicle that was involved in the underlying motor vehicle accident. The Ajunwa Debtors are intelligent people, both social workers. They own a two-family house; for

them to purchase the minimum car insurance on the vehicle involved in the underlying matter was a calculated strategy on their part.

16. The Ajunwa Debtors' own records show how well they manage their affairs even in these extremely fiscal times. The Ajunwa Debtors are responsible people doing something responsible with their money; that is evident based on the virtual small debt in their petition. There is no showing of any financial pressure on the Ajunwa Debtors on the part of the creditors other than Mr. Hill or of financial distress as a consequence of other creditors' claims.

17. The Ajunwa Debtors filed for relief under Chapter 13 because of the $430,000.00 personal injury judgment they received against them on October 1, 2010. **See Exhibit "A" (Copy of the Transcript from the Creditors Meeting, dated December 9, 2010, p. 12 ll. 18-21)** Thus, this judgment was the only catalyst for the commencement of these Chapter 13 cases.

18. Notwithstanding the Ajunwa Debtors' filing seeking relief, the Ajunwa Debtors' own Chapter 13 petition makes clear that they are not in any financial distress, that there are no significant creditors other than Sean Hill and that but for the personal injury judgment, the Ajunwa Debtors would not have filed for bankruptcy protection.

19. In fact, given the Ajunwa Debtors' age and profession, the current economic down turn has not had a negative impact on their financial responsibilities and lifestyle as the Ajunwa Debtors have maintained a strong financial position even when the economy has not.

20. Given that the loan on the real property owned by the Ajunwa Debtors does not mature for perhaps another eight years, and they have been making their monthly mortgage

payments, there is no reason for the commencement of bankruptcy proceedings as their monthly mortgage payment is not a hardship payment. The Ajunwa Debtors have not contacted Mr. Hill to workout payment which could consist of refinancing the real property, borrowing from their 401 (k) or various other options to satisfy the judgment. The Ajunwa Debtors have filed these bankruptcy proceedings for the sole purpose of avoiding paying the personal injury judgment. Their intent is clear from their petition: keep everything for themselves and give nothing to a major creditor.

**B. The Ajunwa Debtors Are Solvent**

21. The Ajunwa Debtors enjoy a upper middleclass lifestyle.

22. They are both highly educated social workers.

23. They own a two-family house that is income-producing; it generates a rent roll.

24. They both bring home $4,500.00 a month for an annual income of $108,000.00.

25. They have adult children who reside with them who are also employed.

26. They pay for private school for their grandchildren.

27. They own and drive a Mercedes Benz.

28. Their debt is miniscule as evidenced by their Chapter 13 petition.

29. The Ajunwa Debtors live well as a result of their own financial responsibility.

30. Accordingly, the Ajunwa Debtors are in no need of bankruptcy protection as they are two solvent, financially responsible professionals.

31. Thus, in deciding this Motion, the Court should only consider the financial stability that the Ajunwa Debtors have shown and that the only reason for filing for bankruptcy relief was to avoid paying the debt owed to Mr. Hill.

**C. Where Does Their Money Go?**

32. On October 1, 2010, Sean Hill secured a personal injury judgment against the Ajunwa Debtors in the amount of $430,000.00 as Nathaniel Ajunwa made an illegal u-turn at an intersection causing Ms. Hill to sustain massive injuries including the loss of his kidney and spleen.

33. The Ajunwa Debtors never appeared at the trial and did not provide any testimony. It is not difficult to see that the Ajunwa Debtors are manipulating the bankruptcy proceedings to avoid paying Mr. Hill.

34. The Ajunwa Debtors have shown nothing but responsibility when it comes to their finances.

35. Although their Chapter 13 petition list that they have $200.00 cash on hand, that entry is curious; for a married couple to take home $9,000.00 a month and not have any money in the bank makes one suspicious.

36. The Ajunwa Debtors are Nigerian citizens, a country known for its vast oil wells. They have family living in Nigeria, and they travel back-and-forth to their native land and continue to maintain roots there. It is not a leap of logic for one to see that the Ajunwa Debtors are investing their money in their native land as they do not reflect any money here in the United States.

37. They have shown that they manage their money well, despite the economy. What are they doing with their money? If it is not here in the United States then where is it?

**D. The Financial Responsibility of the Ajunwa Debtors**

38. The financial responsibility of the Ajunwa Debtors is consistent with the robust payment of the debt they have listed in their Chapter 13 petition. Other than Mr. Hill's $430,000.00 judgment, the next highest creditor is for $13,966.00. Prior to the petition

date, and the entry of the personal injury judgment, the Ajunwa Debtors were current with all payments due their creditors.

39. As indicated above, the Ajunwa Debtors were living on an annual income of $108,000.00 with a total debt of $24,314.00 owed to five consumer creditors. Even if one were to factor out the $24,314.00 pre-petition debt, the Ajunwa Debtors would have $83,686.00 income to maintain a lifestyle that does not require bankruptcy protection.

40. The loan owed on the Ajunwa Debtors' real property is not scheduled to mature for at least eight years. At the time the Chapter 13 petition was filed for the Ajunwa Debtors, the debtors were not in default on their loan obligations or in any financial difficulty. Consistent with the financial health of the Ajunwa Debtors, no efforts were ever made by the debtors to contact their pre-petition creditors to refinance or extend their loans. The reasons are simple. The Ajunwa Debtors are finically well-off and are not under any financial stress or difficulty. Accordingly, there was no need for the Ajunwa Debtors to file for relief under Chapter 13 of the Bankruptcy Code. The Chapter 13 petition was filed solely to avoid the payment of the personal injury judgment owned to Mr. Hill. The Ajunwa Debtors lack credibility.

41. The Chapter 13 petition of the Ajunwa Debtors was filed without any consideration or regard for Mr. Hill in the Plan. As the Ajunwa Debtors are likely to have very few creditors of the substantial significance as Mr. Hill, the Ajunwa Debtors cannot confirm a plan over Mr. Hill's objections.

42. Inasmuch as the Ajunwa Debtors have ties to a foreign country and cannot establish where their money is going, this fact further demonstrates that the Chapter 13 petition for the Ajunwa Debtors was filed in bad faith. As the Chapter 13 petition of the Ajunwa

Debtors was not filed in good faith, the Chapter 13 case of the Ajunwa Debtors must be dismissed.

## ARGUMENT

**A. The Chapter 13 Case of the Ajunwa Debtors Must be Dismissed as a Bad Faith Filing**

43. Under section 1307 (c) of the Bankruptcy Code, a court ". . . may dismiss a case under Chapter 13 of this chapter, whichever is in the best interest of the creditors and the estate. . . ." **11 U.S.C. § 1307 (c) (1) (4).**

44. Courts have the power to dismiss Chapter 13 cases that were filed in bad faith. **See *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 373, 127 S.Ct. 1105, 166 L. Ed. 2d 956 (2007) ("Bankruptcy courts nevertheless routinely treat dismissal for prepetition bad-faith conduct as implicitly authorized by the words 'for cause,' in § 1307 (c); *In re Casse*, 198 F.3d 327, 341-42 (2d Cir. 1999) (holding that it was not an abuse of discretion to dismiss Chapter 13 petition as *void ab initio* when it was filed in bad faith); *In re Shankman*, 382 B.R. 591 (Bankr. E.D.N.Y. 2008)**

45. In the instant case, the Ajunwa Debtors have submitted a purported Chapter 13 Plan which fails to factor in the major substantial creditor Sean Hill. Their plan proposes that they pay to the trustee $40.52 per month for 60 months for a total of $2,431.20. Their plan shocks the conscience of the very spirit of bankruptcy protection. If this plan were intended to include Mr. Hill's personal injury judgment then the plan is woefully inadequate. Based on the numbers presented, the plan does not incorporate Mr. Hill's judgment. The Ajunwa Debtors would have to make significant substantial monthly payments in order to satisfy what is owed to Mr. Hill. As the plan currently exists, Mr. Hill objects to the Ajunwa Debtors' plan.

46. The Ajunwa Debtors' use of Chapter 13 to avoid satisfying Mr. Hill's personal injury judgment is an abuse of Chapter 13 that the good faith requirement was designed to prevent. The Ajunwa Debtors have utilized the bankruptcy laws to create a smoke-and-mirror picture of their finances with the one goal: not paying Mr. Hill. It is crystal clear; the Ajunwa Debtors were not in any actual financial distress prior to the personal injury judgment. It is not speculative to see that the Ajunwa Debtors were financially healthy prior to the Chapter 13 filing with only $24,314.00 in aggregate liabilities and a net positive cash flow and they remain so in spite of this filing.

47. To allow the Ajunwa Debtors to proceed under the protective veil of the bankruptcy laws would open the floodgates for every personal injury defendant, who opts to purchase minimum car insurance, to proceed to Bankruptcy Court if there is a substantial judgment rendered against him, her or them. To permit the Ajunwa Debtors to continue with this sham would violate every public policy provision triumphed under the Bankruptcy Laws.

48. Moreover, it is no more speculative to surmise that the Ajunwa Debtors have squirreled away their United States earnings in their homeland of Nigeria. Two upper middle class professionals who have not experienced any serious financial difficulties, whose money cannot be accounted for in the United States, gives credence to the fact that they have invested their money back in their native land, and thus their Chapter 13 petition was not filed in good faith and must be dismissed.

**B. The Ajunwa Debtors Should Be Enjoined from Converting to Chapter 7**

49. As the Ajunwa Debtors are not without a willingness to continue to use whatever means necessary to avoid satisfying Mr. Hill's judgment, the Ajunwa Debtors should be enjoined from converting the instant Chapter 13 petition to a Chapter 7 petition.

50. Courts have held that conversions under §1307 (a) are not absolute, especially where there is evidence that the debtor is seeking to convert his or her case in bad faith. Courts find that it is appropriate to apply a totality of circumstances test to motions to convert under § 1307 (c). **See *Leavitt v. Soto* (In re Leavitt), 171 F. 3d 1219 (9th Cir. 1999) (applying totality of circumstances test to conversion under section 1307 (c)); Molitor v. Eidson (In re Eidson), 76 F. 3d 218 (8th Cir. 1996); *Gier v. Farmers State Bank* (In re Gier), 986 F. 2d 1326 (10th Cir. 1993).** Courts have also found that the totality of circumstances should take into consideration whether the debtor has abused the "provision, purpose and spirit" of the Bankruptcy Code and whether the filing is "fundamentally fair" to creditors. **See *In re Love*, 957 F. 2d 1350 (7th Cir. 1992).** Implicit in all of these cases is the maxim that the bankruptcy court has the flexibility to prevent abuses of the bankruptcy process.

51. In applying the totality of the circumstances test, courts have enumerated several factors which should be used to guide a court's analysis. For example, "[ ] whether the debtor has stated his debts and expenses accurately; [ ] whether he has made any fraudulent misrepresentation to mislead the bankruptcy court; or [ ] whether he has unfairly manipulated the bankruptcy code," ***In re Eidson*, 76 F. 3d at 220-21.** Given the Ajunwa Debtors bad faith filing under Chapter 13, they would not be able to pass this totality of the circumstances test and therefore, they should be prevented from converting the instant Chapter 13 to a Chapter 7.

52. The Ajunwa Debtors would not be able to sustain a Chapter 7 dismissal: The nature of their debt is a personal injury judgment, secured by real property, which would not be dischargeable in a Chapter 7 proceeding; the timing of their petition is simultaneous with

the personal injury verdict; the debt arose as a result of Debtor Nathaniel Ajunwa making an illegal u-turn, that for all intents and purposes, left Mr. Hill dead; their motive is to avoid paying Mr. Hill's $430,000.00 judgment; their failure to satisfy the debt owed to Mr. Hill will leave Mr. Hill with an empty judgment; they have refused to give any validity to the debt owed to Mr. Hill as they have attempted to circumvent the civil verdict with the arm of the bankruptcy law; the Ajunwa Debtors have assets hidden in a foreign country and thus have mislead this court and misrepresented their assets. *In re Love*, **957 F. 2d 1357.**

53. The Ajunwa Debtors have misrepresented the facts in their petition, unfairly manipulated the Bankruptcy Code, or otherwise filed this Chapter 13 petition and plan in an inequitable manner; they have attempted to defeat state court judgment; their actions amount to egregious behavior. *In re Leavitt*, **171 F.3d 1224.**

54. If § 1307 (c) permits the court to convert or dismiss a Chapter 13 case, in the case at bar, the best interests of the creditor, to wit, Sean Hill, as the sole substantial creditor, would be a dismissal of the Chapter 13 petition and denying a conversion to Chapter 7.

**WHEREFORE,** Sean Hill respectfully requests that an order be entered dismissing the Chapter 13 case of Nathaniel Ajunwa and Regina Ajunwa (Chapter 13 Case No.: 10-15981 (SCC); denying a conversion to a Chapter 7; and granting Sean Hill such further relief as is proper.

Dated: Hollis, New York
January 7, 2011

Respectfully submitted,

RENÉ MYATT, ESQ.

Attorney for SEAN HILL
204-04 Hillside Avenue, 2nd Floor
Hollis, New York 11423
(718) 468-3588
myattlegal@aol.com

**EXHIBIT "A" – Copy of Transcript from Creditors Meeting**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------X

IN THE MATTER OF:

Case No. 10-15981
(Jeffery L. Sapir)

     NATHANIEL AJUNWA
     AND REGINA AJUNWA,

        Debtors.


--------------------------------X

             341 HEARING

             December 9, 2010

HELD AT:        OFFICE OF THE UNITED STATES TRUSTEE
             New York, NY

BEFORE:         JEFFERY L. SAPIR
             Trustee

APPEARANCES:    GEORGE PASIAS, ESQ.
             Counsel for the Trustee

             RENE MYATT, ESQ.
             Counsel for the Creditors

             MR. TAYLOR LLOYD, ESQ.
             Counsel for the Creditors

```
                    I N D E X

                                    RE      RE    V.
WITNESS         DIRECT   CROSS    DIRECT   CROSS   D.    J


                    E X H I B I T S

                                                For   In
PETITIONER           DESCRIPTION                I.D.  Ev.




RESPONDENT           DESCRIPTION               I.D.   IN EV.
```

**Ubiqus/Nation-Wide Reporting & Convention Coverage**
22 Cortlandt Street – Suite 802, New York, NY 10007
Phone: 212-227-7440 * 800-221-7242 * Fax: 212-227-7524

TRUSTEE JEFFERY SAPIR: Okay, this is track no. 19. It's in the matter of Nathaniel and Regina Ajunwa. You want to raise your right hands please? Solemnly swear to tell the truth, the whole truth, and nothing but the truth, so help you God.

MR. NATHANIEL AJUNWA: I do.

MS. REGINA AJUNWA: I do.

MR. SAPIR: State your name and your address please.

MR. AJUNWA: Nathaniel Ajunwa, 912 East 220th Street, Bronx, New York 10469.

MS. AJUNWA: Regina Ajunwa, 912 East 220th Street, Bronx, New York 10469.

MR. SAPIR: Counsel.

MR. GEORGE PASIAS: George Pasias [phonetic], admitted to the Southern District.

MR. SAPIR: Creditors.

MS. RENE MYATT: Yes, Rene Myatt, 204-04 Hillside Avenue, Hollis, New York 11423.

MR. TAYLOR LLOYD: Taylor Lloyd [phonetic], 204-04 Hillside Avenue, second floor, Hollis, New York 11423.

MR. SAPIR: Okay, any other creditors -
-? I show you this petition and supporting
schedules where my thumb is. Is that your
signatures?

MR. AJUNWA: Yes.

MS. AJUNWA: Yes.

MR. SAPIR: And the statements that you
made, were they true and correct to the best
of your knowledge?

MR. AJUNWA: Yes.

MS. AJUNWA: Yes.

MR. SAPIR: Okay, for the record I've
verified that as picture IDs by the New York
State Driver's Licenses, Social Security
numbers from their Social Security cards.
Have you folks owned any real estate in the
last six years?

MS. AJUNWA: Bought the house that's in-
-

[crosstalk]

MR. SAPIR: I'll try to give them my
input. That's the place where you reside,
right? Okay. And that's the house at 912
East 220th Street in the Bronx?

1

2          MR. AJUNWA:  Yes.

3          MS. AJUNWA:  Yes.

4          MR. SAPIR:  And that's a two-family

5    house?

6          MS. AJUNWA:  Yes.

7          MR. AJUNWA:  Yes.

8          MR. SAPIR:  And the house is owned in

9    joint names?

10         MS. AJUNWA:  Yes.

11         MR. AJUNWA:  Yes.

12         MR. SAPIR:  Have you owned any stocks,

13   bonds, and/or mutual funds in the last year?

14         MS. AJUNWA:  No.

15         MR. AJUNWA:  No.

16         MR. SAPIR:  IRA's, Keyos [phonetic],

17   401Ks, 403Bs?

18         MS. AJUNWA:  No.

19         MR. AJUNWA:  No.

20         MR. SAPIR:  Any bank accounts, check or

21   savings?

22         [crosstalk]

23         MR. SAPIR:  You have a 401K at work? And

24   somebody has an IRA?

25         MS. AJUNWA:  Yes.

MR. SAPIR:  You have the IRA?

MS. AJUNWA:  Ahum.

MR. SAPIR:  Okay.  And you have an

annuity at work also, correct?

MS. AJUNWA:  Yes.

MR. SAPIR:  Have you had any bank

accounts, either check or savings within the

last year?

MS. AJUNWA:  Yes.

MR. AJUNWA:  Yes.

MR. SAPIR:  Which bank?

MS. AJUNWA:  I have two - -

MR. AJUNWA:  Chase, and I have Citibank.

MR. SAPIR:  Okay, so there's a Chase and

Citibank?

MR. AJUNWA:  Yeah.

MR. SAPIR:  Okay, they both in joint

names? Or was it one account in your name and

one account in her name?

MR. AJUNWA:  One account in her name.

MR. SAPIR:  Okay, so the Chase account

is in your name?

MR. AJUNWA:  - -

MR. SAPIR:  And the Citibank is in

husband's. Counsel, you should check--

MR. AJUNWA: Joint.

MS. AJUNWA: Joint.

MR. SAPIR: It's joint.

MR. AJUNWA: Ahum.

MR. SAPIR: Both of them?

MR. AJUNWA: Ahum.

MR. SAPIR: Okay.

MR. AJUNWA: - -

MR. SAPIR: The Citibank is joint?

MR. AJUNWA: Is joint. - - is not joint.

MR. SAPIR: Okay. That's where she keeps all her private money. Okay. Have you owned a vehicle within the last year?

MR. AJUNWA: Yes.

MS. AJUNWA: Yes.

MR. SAPIR: What's the make and model?

MR. AJUNWA: 2002 - -.

MR. SAPIR: Okay, is that owned by you free and clear?

MR. AJUNWA: Yes.

MR. SAPIR: Within--let me ask you this; did you file your 2009 federal and state

income taxes?

     MR. AJUNWA:  Yes we did.

     MS. AJUNWA:  Yes.

     MR. SAPIR:  Did you ask for a refund?

     MR. AJUNWA:  Yes we did.

     MR. SAPIR:  Approximately how much did you get back and when did you get it?

     MR. AJUNWA:  Approximately 4,000 and some change.

     MR. SAPIR:  Okay.  And approximately when did you get it?

     MR. AJUNWA:  About January.

     MR. SAPIR:  Okay, so you filed it right away and then you got it?

     MR. AJUNWA:  Ahum.

     MR. SAPIR:  Counsel, did you file a claim, cause I don't see a copy of a claim.

     MR. PASIAS:  Yeah, I did, I did.  This is the claim, it's filed.

     MR. SAPIR:  This is not an official claim.  You've got to go onto the website, court's website, and use the official claim. Technically this is not a claim.

     MR. PASIAS:  Okay, I'll go on the

court's website.

MR. SAPIR:  Yeah, there's an official

form.  Yeah, there's an official Southern

District form.

MR. PASIAS:  Okay.

MR. SAPIR:  Within the last year has

anyone died and left you any inheritance?

MR. AJUNWA:  No.

MS. AJUNWA:  No.

MR. SAPIR:  Might you be the beneficiary

under any will or any trust that you know of?

MR. AJUNWA:  No.

MS. AJUNWA:  No.

MR. SAPIR:  Counsel, on Schedule C,

although it's minimal, but you're going to

have to amend.  You claim cash and you can't

claim a homestead exemption at the same time,

so take the cash out.  It's not going to make

a difference, but we got to take it out.

Otherwise I have to object to it.

MR. PASIAS:  Which cash?

MR. SAPIR:  You claimed $200 cash.  The

checking.

MR. PASIAS:  All right, no problem, I'll

change it.

MR. SAPIR: It's just a formality. All right, schedules state that Mr. is employed by the Services for the Underserved.

MR. AJUNWA: Yes.

MR. SAPIR: And Mrs. is employed by Harlem United Community Aids.

MS. AJUNWA: Yes.

MR. SAPIR: Okay. And Mr., what do you do for your employer? What's your occupation? What do you do for a living?

MR. AJUNWA: I'm a social worker.

MR. SAPIR: Social worker, okay. And Mrs., what do you do for your employer?

MS. AJUNWA: I'm also a social worker.

MR. SAPIR: Social worker, okay. How old is the son, because we have to have ages. Don't give me names, but how old is the son?

MS. AJUNWA: Twenty. The youngest?

MR. SAPIR: I don't know, it says all you have is one son and one daughter.

MS. AJUNWA: Yes, twenty years old.

MR. SAPIR: Twenty. And how old is the daughter?

1

2          MR. AJUNWA:  Twenty-five.

3          MR. SAPIR:  Twenty-five, okay.  And

4     they're both living at home?

5          MS. AJUNWA:  Yes.

6          MR. SAPIR:  Okay.  According to the

7     schedules, you both take home about just

8     under $4,500 per month, is that correct?

9          MR. AJUNWA:  That's right.

10          MR. SAPIR:  And how much is the monthly

11     mortgage payment?

12          MR. AJUNWA:  $1,674.76.

13          MR. SAPIR:  Does that mortgage payment

14     include the real estate taxes?

15          MR. AJUNWA:  Yes.

16          MR. SAPIR:  How about homeowner's

17     insurance?

18          MR. AJUNWA:  Yeah, it's included.

19          MR. SAPIR:  Included.  Gas, electric,

20     and heat fuel runs you about $300 a month?

21          MS. AJUNWA:  Yes.

22          MR. SAPIR:  Food bill runs you about

23     $400 a month.

24          MS. AJUNWA:  Yes.

25          MR. AJUNWA:  Yes.

MR. SAPIR:  Transportation runs you, if I could see it, 180?

MS. AJUNWA:  Yes.

MR. AJUNWA:  Yes.

MR. SAPIR:  Car insurance is $300 a month? You have to say yes or no.

MR. AJUNWA:  Yes.

MR. SAPIR:  Okay, and you have to pay for the grandchildren's schooling?

MR. AJUNWA:  Yes.

MS. AJUNWA:  Yes.

MR. SAPIR:  Yeah, I know, but it's grandchildren.  I have a problem with that, but maybe they have a problem with it also. But that's just a gratuitous payment. There's nothing that obligates them to make that payment.  And how did you folks get into your financial difficulties?

MR. AJUNWA:  I had an accident and I was - -

MR. SAPIR:  Okay.  Did you have insurance at the time?

MS. AJUNWA:  Yes.

MR. SAPIR:  Okay.

MR. PASIAS:  He had a minimal policy. That got a 430,000 excess verdict.

MR. SAPIR:  Okay.  Creditor, any questions?

MS. MYATT:  I have a number of questions, but apparently I'm going to have to - -

MR. SAPIR:  [interposing] Right on 2004, right.  Well you can ask a couple, I'll give you a couple.  So give me your two best.

MS. MYATT:  My two best.  Are you folks still citizens in Nigeria?

MR. AJUNWA:  No.

[crosstalk]

MR. AJUNWA:  Yes, yes, yes.

MS. MYATT:  Okay, do you own property in Nigeria?

MR. AJUNWA:  No we don't.

MS. MYATT:  One more.

MR. SAPIR:  Okay.

MS. MYATT:  Do you have family in Nigeria?

MR. AJUNWA:  Her mother, yes.

MS. AJUNWA:  My mother - -

MS. MYATT:  You only giving me those

three?

MR. SAPIR:  You want to get another good

one?

MS. MYATT:  You know I do.

MR. SAPIR:  Okay, all right, go ask it.

MS. MYATT:  Did your mother live in a

home in Nigeria?

MS. AJUNWA:  No.

MS. MYATT:  Excuse me?

MR. AJUNWA:  No, no, no.

MS. MYATT:  She lives in an apartment or

she lives in a house?

MR. AJUNWA:  She lives in an apartment.

MS. AJUNWA:  An apartment.

MS. MYATT:  An apartment?

MR. AJUNWA:  In the village, yes.

MS. MYATT:  She pays rent or it's

something she owns?

MS. AJUNWA:  - - A small house where

they have been living for years.

MS. MYATT:  Okay, does she own that

house?

MS. AJUNWA:  Yeah.

1

2          MS. MYATT:  Okay, are either of you co-

3      owners of that property?

4          MS. AJUNWA:  No, no.

5          MS. MYATT:  Do you have any bank

6      accounts in Nigeria?

7          MS. AJUNWA:  No.

8          MR. SAPIR:  Okay, so you can ask for the

9      rest of the 2000 report.

10          MS. MYATT:  I appreciate it.

11          MR. SAPIR:  Okay.

12          MS. MYATT:  Thank you sir.

13          MR. SAPIR:  All right, so I have no

14      further questions, and I'm going to close the

15      meeting.  Okay.

16              [END OF HEARING]

# CERTIFICATE

I, Walter Baker, certify that the foregoing transcript
of proceedings in the Bankruptcy Court of the 341
Hearing of Nathaniel Ajunwa and Regina Ajunwa, Case
No. 10-15981 was prepared using standard electronic
transcription equipment and is a true and accurate
record of the proceedings.


Tape #1019

Counter #s ___N/A_____ to _____

Signature: _Walter Baker_

Date: December 22, 2010

ERRATA SHEET FOR TRANSCRIPT OF ＿＿＿＿＿＿＿

RE: ＿＿＿＿＿＿＿＿＿＿ DATE TAKEN: ＿＿＿＿＿

PAGE     LINE #      CORRECTION        REASON

＿＿＿＿＿＿＿＿＿＿＿＿＿＿

WITNESS' NAME

SUBSCRIBED AND SWORN TO THIS

＿＿＿＿ DAY OF ＿＿＿＿＿, 200＿＿

＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿

**AFFIDAVIT OF SERVICE**

STATE OF NEW YORK    )
COUNTY OF QUEENS    ) ss.:

I, Kenny Milord being duly sworn deposes and says:

I am not a party to this action, am over 18 years of age and reside in Nassau, New York.

On January 7, 2011 I served the within **MOTION TO DISMISS** by depositing a true copy thereof in a post-paid wrapper, in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State, addressed to each of the following persons at the last known address set forth after each name:

TO:    GEORGE BASSIAS, ESQ.
      Attorney for Debtors
      21-83 Steinway Street
      Astoria, New York 11105
      (718) 721-4441

      JEFFREY SAPIR, ESQ.
      Chapter 13 Trustee
      399 Knollwood Road, Suite 102
      White Plains, New York 10603
      (914) 328-6333

      UNITED STATES TRUSTEEE
      SOUTHERN DISTRICT OF NEW YORK
      One Bowling Green
      New York, New York 10004

HONORABLE SHELLEY C. CHAPMAN
United States Bankruptcy Judge
Alexander Hamilton Custom House
One Bowling Green – Room 610
New York, New York 10004

Kenny Milord

Sworn to before me this
7 day of January 2011

Notary Public **RENE MYATT**
**NOTARY PUBLIC, State of New York**
**No. 02MY6041652**
**Qualified in Queens County**
**Commission Expires May 8, 20 14**

Stamp/Seal

9

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X  App. Term No.:

In Re
                                                          Case No.: 10-15981-SCC

NATHANIEL AJUNWA and REGINA AJUNWA,

                                                          Chapter 13

                        Debtors.

-------------------------------------------------------------------X

========================================================================

## **MOTION TO DISMISS**

-----------------------------------------------------------------------------

**THE LAW OFFICE OF
RENÉ MYATT
204-04 HILLSIDE AVENUE 2ND FLOOR
HOLLIS, NEW YORK 1142^
PHONE: (718) 468-3588
FAX:     (718) 468-5731**

========================================================================
========================================================================

Pursuant to 22 NYCRR 130-1.1-a, the undersigned, an attorney admitted to practice in the courts
of New York State, certified that upon information and belief and reasonable inquiry, (1) the
contentions contained in the annexed document are not frivolous and that (2) if the annexed
document is an initiating pleading, (*i*) the matter was not obtained through illegal conduct, or that
if it was, the attorney or other persons responsible for the illegal conduct are not participating in
the matter or sharing in any fee earned there from and that (*ii*) if the matter involves potential
claims for personal injury or wrongful death, the matter was not obtained in violation of 22
NYCRR 1200.41-a.

Dated: Hollis, New York  January 7 2011

Signature  _____
Print Signer's Name: René Myatt_____