UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X  CASE: 10-15981

In re
Nathaniel Ajunwa and Regina Ajunwa                    Chapter 13
                              Debtors

-------------------------------------------------------------------X

## MOTION TO CONVERT A CASE UNDER CHAPTER 13 TO A CASE UNDER CHAPTER 7

## PLEASE TAKE NOTICE OF THE FOLLOWING:

1. Pursuant to 11 U.S.C. § 1307(a) , the above named Debtor(s) requests that this court

   enter an Order converting this case under Chapter 13 to a case under Chapter 7 of the

   Bankruptcy code (title 11 of the United States Code) to be held before Honorable **Shelley**

   **C. Chapman,** United States Bankruptcy Judge, in **Room 610** of the United States

   Bankruptcy Court, Alexander Hamilton Custom House, One Bowling Green, New York,

   New York 10004, on **February 10, 2011,** at 10:00 a.m., or as soon as counsel may be

   heard;

2. **Pursuant to Local Bankruptcy Rule 9006-1(a) Answering papers, if any, are to be**

   **served so as to be received by debtor's counsel no later than 7 days before the**

   **hearing date.**

Dated: Queens, NY
         January 11, 2011

                                        _____
                                        GEORGE BASSIAS, ESQ
                                        ATTORNEY FOR DEBTORS
                                        21-83 Steinway Street
                                        Astoria, NY 11105
                                        718-721-4441

**To:**

**HONORABLE SHELLEY C. CHAPMAN**
United States Bankruptcy Judge
Alexander Hamilton Custom House
One Bowling Green – Room 610
New York, New York 10004

**JEFFREY SAPIR, ESQ.**
399 Knoll Wood Road – Suite 102
White Plains, New York 10603

**RENE MYATT, ESQ.**
Attorney for Sean Hill
204-04 Hillside Avenue – 2nd Floor
Hollis, New York 11423

**UNITED STATES TRUSTEE**
Southern District of New York
One Bowling Green
New York, New York 10004

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X CASE: 10-15981Scc

In re
Nathaniel Ajunwa and Regina Ajunwa                     Chapter 13
                        Debtors
-------------------------------------------------------------------X Affirmation in Support of the Motion
                                                        to Convert to Chapter 7 and
                                                        Opposition to the Motion of Rene
                                                        Myatt

George Bassias duly admitted to practice law in the Southern District in New York affirms the
following to be true under penalty of perjury:

1. I am debtors counsel as such, am fully familiar with this case.

2. The Source of my knowledge is my file and conversation with the client.

3. Prior to leaving office, Governor Paterson signed a bill, S7034A-2009, which upon
   information and belief takes effect on or about January 21, 2011.

4. The Bill increases the Homestead Exemption to $150,000.00 per person and therefore in
   the debtors case there is now a combined Homestead Exemption of $300,000.00 for
   debtor and co-debtor. That amount along with the $169,000.00 first mortgage on their
   house would leave no equity whatsoever even if we assume, for argument sake only, that
   the value of their home is consistent with median price argued by Rene Myatt, Attorney
   for Sean Hill, a judgment creditor, in her papers which states a median price of
   $403,750.00.

5. The appraisal given to the court by the debtors attached hereto as Exhibit A is a true and
   correct appraisal of your affiant which values the house at $335,000.00. I have never used
   this appraiser before this case. It was recommended by David Doyaga and Gregory
   Messer during a reason bankruptcy seminar. Debtor's were disappointed with the result
   because there was equity in their home.

6. Rene Myatt is incorrect to state that the Homestead Exemption does not apply and that the Homestead Exemption only applies when families are in danger of becoming public charges of the state. She offers no law to support that statement.

7. She further states that debtors filed a Chapter 13 plan in bad faith. The fact that the plan did not have a payment to them does not conclusively establish that the petition was filed in bad faith. The debtors were diligently pursing a motion to avoid the lien to the extent that the lien impairs their Homestead Exemption. Once the court would decide that motion debtor would be in a better position to calculate what the proper payments would be. The very essence of a Chapter Thirteen and motions to avoid liens exist for this purpose. Ms. Myatt is conducting a fishing expedition with her motion. Ms. Myatt has not offered any good faith arguments behind her statement both that debtors have filed their Chapter 13 in bad faith and in support of a motion to dismiss.

8. The court should disregard most of her motion because it is speculative and insufficient in fact and law. Wherefore, I ask the court to (1) convert this matter to a Chapter 7 effective after 1/22/11, the date the new homestead exemption takes place and consider the case filed as of that date, (2) remove the judgment of Sean Hill in its entirety as per debtor's motion to avoid the lien, and (3) to deny motion of Rene Myatt, and whatever else the court deems proper.

Dated: Queens, NY
      January 11, 2011

GEORGE BASSIAS, ESQ
ATTORNEY FOR DEBTORS
21-83 Steinway Street
Astoria, NY 11105
718-721-4441



**EAST COAST APPRAISAL SERVICE** ™

Email: info@eastcoastappraisal.com
50 Court Street, Suite 508, Brooklyn, NY 11201
Phone: 718-834-1700  Fax: 718-834-1807

October 1, 2010

Mr. George Bassias, Esq.
2183 Steinway Street
Astoria, NY 11105

Re:   Appraisal Report for Market Valuation Purposes for property located at:
912 East 226th Street[Nathaniel Ajunwa]]
Bronx, NY 10469
Effective Date of the Appraised Value October 1, 2010

Dear Mr. Bassias

As requested, we have conducted an inspection of the above premises for the purpose of estimating the fair and reasonable market value of the fee simple estate as of October 1, 2010. The purpose of this appraisal is to assist in a legal proceeding.

The subject premises consist of a fully attached 2 family brick home in average condition with 1,800 square feet of living area situated on a parcel of land measuring 2,160 sq. ft. The property is located on a quiet block in a section of Bronx County called "Williamsbridge". The overall real estate market in the neighborhood is depressed with many foreclosures and declining property values. There has been an overall estimated 30% decline in property values over the last 3 years.

---

## VALUATION

In our opinion, the fair and reasonable valuation of the subject premises as of September 20, 2010 is:

### THREE HUNDRED AND THIRTY FIVE THOUSAND [$335,000] DOLLARS

---

Should you require any additional information, please do not hesitate to contact the undersigned.

Respectfully Submitted,

Michael Pavlakos
Senior Appraiser
NYS Certification #45-00005617
Expires 12/02/2011

2



# SUMMARY OF SALIENT FACTS AND CONCLUSIONS

| | |
|---|---|
| LOCATION: | 912 East 220th Street, Bronx, NY 10469 |
| COUNTY: | Bronx |
| ASSESSORS PARCEL #: | 2046900048 |
| SECTION VOLUME: | 1808 |
| BLOCK: | 4690 |
| LOT: | 48 |
| CENSUS : | 0501 |
| IMPROVEMENTS: | 3 story attached brick urban row house |
| GROSS LIVING AREA: | 1,800 square feet |
| GROSS BASEMENT AREA: | 740 sq. ft. |
| FLOOD INFORMATION: | Zone X: (Not in a flood zone) Map Panel #360497-0104  09/05/2007 |
| ZONING INFORMATION: | R-4 MODERATE DENSITY RESIDENTIAL |
| OCCUPANCY: | Legal 2 family |

VALUE BY SALES COMPARISON APPROACH: $335,000

| | |
|---|---|
| VALUE BY COST APPROACH: | Not Applicable |
| VALUE BY INCOME APPROACH: | Not Applicable |
| FINAL ESTIMATE OF VALUE: | $335,000 |
| EFFECTIVE DATE OF VALUATION: | October 1, 2010 |

3

# IMPROVEMENT DESCRIPTION

| | |
|---|---|
| BUILT: | 1960 [+-] |
| FACADE: | Brick |
| EXTERIOR: | Brick |
| ROOF: | Flat-tar paper |
| WINDOWS: | Thermo pane |
| FOUNDATION: | Concrete & stone |

## MECHANICAL

| | |
|---|---|
| PLUMBING: | Copper & galvanized piping |
| HEATING: | Central Heating System/Gas/Circulating Hot Water |
| ELECTRIC: | 220 Volt-100 Amps |
| HOT WATER SUPPLY: | Boiler |

## LAYOUT

| | |
|---|---|
| BASEMENT: | Rec Room-Storage |
| FIRST FLOOR: | Living room, 1 bedroom, kitchen, 1 bath |
| SECOND FLOOR: | Living room, dining room, kitchen, 1/2 bath |
| THIRD FLOOR: | Bedrooms[3] 1 bath |

## CONDITION

As observed in the physical inspection conducted on October 1, 2010 it was noted that the dwelling was in typical average condition with semi-modern kitchens and bathrooms. No measureable deferred maintenance was observed, with the property appearing structurally sound.

4

# HIGHEST AND BEST USE

Essential to the concept of value is the theory of Highest and Best Use or most profitable use. The Appraisal Institute defines Highest and Best use as follows:

"The most profitable likely use to which a property can be put. The opinion of such use may be based on the highest and most profitable continuous use to which the property is adapted and needed or likely to be in demand in the reasonably near future. However, elements affecting value which while within the realm of possibility is not fairly shown to be reasonably probable should be excluded from consideration. Also if the intended use is dependent upon an uncertain act or another person the intention cannot be considered.

The use of land which may reasonably be expected to produce the greatest net return to land over a given period of time; the legal use which will yield to land the highest present value sometimes called optimum use."

In estimating "Highest and Best Use" there are essentially four considerations:

Possible Use:
To what uses is it physically possible to put the site in question

Permissible Use:
What uses are permitted by zoning and deed restrictions on the site in question

Feasible Use:
Which possible and permissible uses will produce the highest net return or highest present worth?

Maximally Productive Use:
Among the feasible uses which use will produce the highest net return or the highest present worth.

The Highest and Best Use of the land or site if vacant and available for use may be different from the Highest and Best Use of the improved property. This will be true when the improvement is not an appropriate use and yet makes a contribution to total property value in excess of the value of the site.

Since the appraisal of the subject property is based on a particular premise of use the highest and best use analysis determines just what this premise of use should be. A highest and best use analysis consists of considering the highest and best use of a property under two assumptions: with a vacant and available site and with the property as improved. These two assumptions on highest and best use are correlated into one final estimate of highest and best use.

5

## Land as if Vacant and Available

The physical characteristics of the site impose few development restrictions. Because of its size and shape the parcel has limited uses.

The legal restrictions applicable to the site consist of zoning regulations enforced by the local municipality. These regulations limit the site to residential use.

The immediate area consists of primarily residential and commercial properties with typical supporting commercial overlay. In this sense the subject property melds well with the other properties in the area.

If the site were vacant and available today the highest and best use would be for residential development.

## Property as Improved

**The subject site was improved with a 1,800 square foot legal 2 family home The current use of the property is permissible under the existing zoning ordinance.**

The area surrounding the subject property is mixed residential/commercial. We considered all information pertaining to the physical characteristics of the site, including size, shape, access, topography and the availability of utilities. Based on a consideration of all pertinent data we have concluded that the subject site is physically suited for its present use.

After estimating the value of the subject land under the present use we considered whether any other uses which are physically possible, legally permissible, or financially feasible would support a higher land value.

We have concluded that the present use of the subject property is the use, which we considered to be maximally productive.

Given that the analysis meets the four criteria of Highest and Best Use, it is concluded that the use, which represents the Highest, and Best Use of the subject property was that of its use on **October 1, 2010.**

6

## DEFINITION OF MARKET VALUE

The valuation set forth in this report is "market value", defined as the probable price in terms of money which a property will bring in a competitive and open market under all conditions requisite to a fair sale. Specifically, the purchaser and the seller are to each act prudently, knowledgeably, and that the agreed price is not affected by inappropriate stimulus, duress or motivation.

Implicit in this definition are the consummation of a sale as of a specified date and the passing of title from seller to purchaser under conditions whereby:

1) Buyer and seller are typically motivated.

2) Both parties are well informed or well advised; and each acts in what they consider being in their own best interests.

3) A reasonable amount of time is allowed for exposure in the open market.

4) Payment is made in cash or its equivalent.

5) Financing is on terms generally available in the community as of a specified date and typical for the property type in its locale.

6) The price represents an accepted consideration of the property sold unaffected by special financing amounts and/or terms, services, fees, costs or credits occurred in the transaction.

# THE APPRAISAL PROCESS

There are three traditional approaches that can be employed in establishing market value. These approaches generally referred to as the Sales Comparison Approach, the Cost Approach, and the Income Approach.

The Sales Comparison Approach: The Sales Comparison Approach is a set of procedures in which a value indication is derived by comparing the property being appraised to similar properties that have been sold recently, then applying appropriate units of comparison and making adjustments to the sales prices of the comparables based on the elements of comparison. The sales comparison approach may be used to value improved properties, vacant land, or land being considered as though vacant; it is most common and preferred method of land valuation when an adequate supply of comparable sales is available.

The Cost Approach: The Cost Approach is a set of procedures through which a value indication is derived for the fee simple interest in a property by estimating the current cost to construct a reproduction (or replacement for) the existing structure, including an entrepreneurial incentive, deducting depreciation from the total cost, and adding the estimated land value. Adjustments may then be made to the indicated fee simple value of the subject property to reflect the value of the property interest being appraised. The cost approach is not applicable to condominium units and therefore was not developed.

The Income Approach: The Income Capitalization Approach is a set of procedures through which as appraiser derives a value indication for an income-producing property by converting its anticipated benefits (cash flows and reversion) into property value. This conversion can be accomplished in two ways. One year's income expectancy can be capitalized at a market-derived capitalization rate or at a capitalization rate that reflects a specified income pattern, return on investment, and change in the value of the investment. Alternatively, the annual cash flows for the holding period and the reversion can be discounted at a specified yield rate. The cost approach is not applicable to condominium units and therefore was not developed.

Reconciliation: Reconciliation is the last phase of any valuation assignment in which two or more value indications derived from market data are resolved into a final value opinion, which may be either a final range of value or a single point estimate.

Since this assignment specifically calls for an estimate of market value of a typical residential dwelling for the subject area, the "Sales Comparison Approach", has been utilized and given most emphasis. Properties similar to the subject are typically valued by the sales comparison approach. Due to the lack of new construction and limited investment in residential dwellings, the cost approach and income approach are not considered reliable indicators of market value, and are therefore not utilized.

8

# THE SALES COMPARISON APPROACH

The Sales Comparison Approach relies upon an analysis of recent sales of similar properties and proves an indication, in theory, of what the subject property itself would sell for as of the date of valuation. Sales comparisons are reduced to a common unit rate, such as the price per square foot. The sales utilized in my analysis are very similar in terms of physical and location characteristics as compared to the subject property and could be considered excellent indicators of market value. After adjusting for differences in time, location, size and utility, these sales provide a range of value in which the subject property will fall.

In choosing comparable sales, the appraiser focused upon similar brick urban row houses of vintages similar to our 20 year old subject property within the subject market area with comparable use and, to the degree possible, comparable size. The property rights conveyed were on a Fee Simple basis.

A careful investigation of the market revealed (3) sales the appraiser deemed to be comparable to the subject. The comparable sales were analyzed on a price per square foot of gross living area and compared to the subject property for differences in date of sale, location, building size, land/building ratio, physical characteristics and amenities.

The following is a summary of the salient features for the comparable sales selected.

| COMPARABLE SALE #1 | |
|---|---|
| LOCATION: | 1051 East 220th Street, Bronx, NY 10469 |
| PROXIMITY: | .23 Miles |
| UNIT SIZE: | 1,800 Square Foot-Legal Two Family |
| ROOMS / BATH(S): | (9) Rooms, (4) Bedrooms, and (2.5) Bathrooms |
| SELLING PRICE: | $339,000 |
| TRANSFER DATE: | 2/20/2010 |
| SELLING PRICE PER SQUARE FOOT: | $188.34 |
| DATA SOURCE REFERENCES/ COMMENTS | Geodata Plus Inc. This was a similar-style home in average condition |

| COMPARABLE SALE #2 | |
|---|---|
| LOCATION: | 4038 Bronxwood Avenue, Bronx, NY 10469 |
| PROXIMITY: | .42 Miles |
| UNIT SIZE: | 1,500 Square Foot-Legal Two Family |
| ROOMS / BATH(S): | (9) Rooms,(4) Bedrooms, and (2.5) Bathrooms |
| SELLING PRICE: | $325,000 |
| TRANSFER DATE: | 1/21/2010 |
| SELLING PRICE PER SQUARE FOOT: | $216.67. |
| DATA SOURCE REFERENCES/ COMMENTS | Geodata Plus Inc. This was a smaller home in good condition |

| COMPARABLE SALE # 3 | |
|---|---|
| LOCATION: | 1023 East 218th , Bronx, NY 10469 |
| PROXIMITY: | .17 Miles |
| UNIT SIZE: | 2,200 Square Foot-Legal Two Family |
| ROOMS / BATH(S): | (12) Rooms,(6) Bedrooms, and (3) Bathrooms |
| SELLING PRICE: | $350,000 |
| TRANSFER DATE: | 6/21/2010 |
| SELLING PRICE PER SQUARE FOOT: | $159.09 |
| DATA SOURCE REFERENCES/ COMMENTS | Geodata Plus Inc. This was a larger home in similar condition |

# COST APPROACH

Please note that the subject property is a "typical" condominium unit for the subject area. There is ample verifiable supporting sales data. The "Direct Sales Comparison Approach" can therefore most effectively ascertain the overall marketability of the subject property. The "Cost Approach" is therefore considered "not applicable".

Due to the lack of residential new construction, and the scarcity of available building lots in the subject area, the "Cost Approach" is not considered a valid indicator of market value, and was not considered in this report.

## INDICATED VALUE BY THE COST APPROACH

Not Applicable

# THE INCOME APPROACH

The underlying assumption of the Income Approach is that the typical, prudent purchaser will pay no more for a property than the interest. The value is derived through the capitalization process. This estimate is based upon an analysis of the property's potential net revenue flow:

The following is the methodology applicable in this approach:

1) The projection of the potential income from all sources which a competent owner or manager may legally generate from the realty over a specific or estimated period of time.

2) An estimate of vacancy and bad debts, as well as expenses incurred in the operation of the realty. These deductions, subtracted from the potential gross income, result in a stabilized net operating income.

3) The development of an overall rate. This includes the weighted affect of a percentage return to the equity position, the weighted effect of the debt service and the present worth of the future disposition or refinancing of the realty.

4) The overall rate, when divided into the net operating income, produces the final estimates of value.

Properties similar to the subject are typically not traded for their income potential. The "Income Approach" was therefore not considered to be a statistically viable indicator of value, and is consequently not utilized in this report.

## INDICATED VALUE BY THE INCOME APPROACH:

### Not Applicable

# RECONCILIATION OF VALUE

In the previous sections of this appraisal report, the three approaches to estimate value have been considered, utilized, and emphasized as they apply to the fee simple of the ownership of the subject property and these indicated values are:

| | |
|---|---|
| Market Data/Direct Sales Comparison | $335,000 |
| Cost Approach | Not Applicable |
| Income Approach | Not Applicable |

Since this assignment calls for the appraisal of a typical residential 2 family home, the Direct Sales Comparison Approach was given most emphasis. Supporting sales were deemed to be comparable to the subject property were ascertained. Adjustments were made to these market supporting comparable sales for any differences between them and the subject property. All comparable sales were visited and adjusted where necessary for value influencing characteristics such as location, condition, and size. Once reconciled, these comparables provided reliable insight as to the subject's market value.

The Cost Approach was considered as "not applicable" as the subject property is typical to the area. There is ample supporting market data consequently making it inappropriate to place any emphasis on the cost approach.

The Income Approach was considered "not applicable". These types of properties are not typically purchased for their rent potential to an investor.

Assumptions made in the comparable market analysis were both reasonable and consistent. It is our opinion that the analysis yielded an estimate which best represents the Market Value of the subject property as previously defined in this report.

It is our judgment and opinion that the Market Value of the subject property as of October 1, 2010 is:

## THREE HUNDRED AND THIRTY FIVE THOUSAND DOLLARS
### $335,000

Michael Pavlakos
Senior Appraiser
NYS Certification #45-00005617
Expires 12/02/2011

# ADDENDUM SECTION









## STATEMENT OF LIMITING CONDITIONS AND APPRAISER'S CERTIFICATION

**CONTINGENT AND LIMITING CONDITIONS:** The appraiser's certification that appears in the appraisal report is subject to the following conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to do it. The appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title. The property is appraised on the basis of it being under responsible ownership.

2. The appraiser may have provided a sketch in the appraisal report to show approximate dimensions of the improvements and the sketch is included only to assist the reader of the report in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in the appraisal report whether the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in questions, unless specific arrangements to do so have been made beforehand.

5. The appraiser has estimated the value of the land in the cost approach at its highest and best use and the improvements at their contributory value. These separate valuations of the land and improvements must not be used in conjunction with any other appraisal and are invalid if they are so used.

6. The appraiser has noted in the appraisal report any adverse conditions (such as, needed repairs, depreciation, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the normal research involved in performing the appraisal. Unless otherwise stated in the appraisal report, the appraiser has no knowledge of any hidden or unapparent conditions of the property or adverse environmental conditions (including the presence of hazardous wastes, toxic substances, etc.) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied, regarding the condition of the property.
   The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, the appraisal report must NOT be considered as any type environmental assessment or property inspection of the property

7. The appraiser obtained the information, estimates, and opinions that were expressed in the appraisal report from sources that he or she considers being reliable and believes them to be true and correct. The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties.

8. The appraiser will not disclose the contents of the appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice.

9. The appraiser may have based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption of the improvements will be performed in a workmanlike manner.

10. The appraiser must provide his or her prior written consent before the lender/client specified in the appraisal report can distribute the appraisal report (including conclusions about the property value, the appraiser's identify and professional designations, and references to any professional appraisal organizations of the firm with which the appraiser is associated) to anyone other than the borrower, the mortgage of its successors and assigns; the mortgage insurer; consultants; professional appraisal organizations; any state or federally approved financial institution; or any department agency, or instrumentality of the United States or any state of the District Of Columbia; except that the lender/client may distribute the property description section of the report only to data collection or reporting service (s) without having to obtain the appraiser's prior written consent.
The appraiser's written consent and approval must also be obtained before the appraisal can be conveyed by anyone to the public through advertising, public relations, news, sales, or other media.

**APPRAISER'S CERTIFICATION:** The appraiser certifies and agrees that:

1. I have researched the subject market area and have selected a minimum of three recent sales of properties most similar and proximate to the subject property for consideration in the sales comparison analysis and have made a dollar adjustment when appropriate to reflect the market reaction to those items of significant variation. If a significant item in a comparable property is superior to, or more favorable than, the subject property, I have made a NEGATIVE adjustment is made to reduce the adjusted sales price of the comparable and, if a significant item in a comparable property is inferior to, or less favorable than the subject property, I have made a POSITIVE adjustment is made to increase the adjusted sales price of the comparable.

2. I have taken into consideration the factors that have an impact on value in my development of the estimate of market value in the appraisal report. I have not knowingly withheld any significant information from the appraisal report and I believe, to the best of my knowledge, that all statements and information in the appraisal report are true and correct.

3. I stated in the appraisal report only my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the contingent and limiting conditions specified in this form.

4. I have no present or prospective interest in the property that is the subject to this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or the estimate of market value in the appraisal report on the race, color, religion, sex, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property.

5. I have no present or contemplated future interest in the subject property, and neither my current or future employment nor my compensation for performing this appraisal is contingent on the appraised value of the property.

6. I was not required to report predetermined value or direction in value that favors the cause of the client or any related party, the amount of value estimate, the attainment of a specific result, or the occurrence of a subsequent event in order to receive my compensation and/or employment for performing the appraisal. I did not base the appraisal report on a requested minimum valuation, a specific valuation, or the need to approve a specific mortgage loan.

7. I performed this appraisal in conformity with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place as of the effective date of this appraisal, with the exception of the departure provision of those Standards, which does not apply (unless specifically stated so). I acknowledge that an estimate of a reasonable time for exposure in the open market is a condition in the definition of market value and the estimate I developed is consistent with the marketing time noted in the neighborhood section of this report, unless I have otherwise state in the reconciliation section.

8. I have personally inspected the *exterior only* areas of the subject property, and the exterior of all

properties listed as comparables in the appraisal report (unless otherwise indicated). I further certify that I have noted any apparent or known adverse conditions in the subject improvements, on the subject site, or on any site within the immediate vicinity of the subject property of which I am aware and have made adjustments for these conditions in my analysis of the property value to the extent that I had market evidence to support them. I have also commented about the effect of the adverse conditions on the marketability of the subject property.

9. I personally prepared all conclusions and opinions about the real estate that were set forth in the appraisal report. If I relied on significant professional assistance from any individual or individuals in the performance of the appraisal of the preparation of the appraisal report, I have named such individual(s) and disclosed the specific tasks performed by them in the reconciliation section of this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in the report; therefore, if an unauthorized change is made to the appraisal report, I take no responsibility for it.

Michael Pavlakos, as president



**EAST COAST** APPRAISAL SERVICE ™  Email: info@eastcoastappraisal.com

The Real Estate Valuation & Inspection Specialists     TOLL FREE-800-228-2158 FAX 718-834-1807

# MICHAEL G. PAVLAKOS-UNIFIED COURT SYSTEM FIDUCIARY SPECIAL ID # 280774

## QUALIFICATIONS PROFILE

Michael G. Pavlakos is a New York State Certified Real Estate Appraiser who has been preparing real estate appraisals for the legal profession for over sixteen years. Many of these assignments were performed in the capacity as neutral appraiser court appointed by the New York State Supreme Court from Supreme Court Justices in the five Boro's, Nassau, Suffolk and Westchester Counties. These assignments ranged from small residential properties to large, complex industrial properties prepared on properties located on a local, national and international level.

## EXPERIENCE

1991-PRESENT     East Coast Appraisal Service          Brooklyn, NY
*President, Senior Appraiser*
- Responsible for appraiser performance and quality control on all assignments prepared on behalf of the State of New York's Unified Court System in the five Boro's of New York, Nassau, Suffolk and Westchester Counties.
- Senior Appraiser responsible for the quality and integrity of all residential and commercial appraisals prepared for some of the country's leading mortgage lenders.
- Coordinate and supervise all national and international appraisal assignments.

1986-1991     Appraisal Advocates          Brooklyn, NY
*Managing Director, Partner*
- Operations Manager supervising and coordinating appraisal assignments.
- Senior Review Appraiser and Quality Control Manager overseeing a staff of fifteen real estate appraisers.

1983-1986     Vardakis Associates          Brooklyn, NY
*Senior Real Estate Appraiser & Trainer*
- Appraised over 1,500 residential and commercial properties.
- Instructed and trained staff both in the field and in the office in the preparation of professional real estate appraisal reports.

## EDUCATION

1997     New York University          New York, NY
- Graduate, Degree in Liberal Arts

- The Real Estate Institute (Real Estate and Property Appraisals)
  Examinations Passed
    - Course 8-1 -Principals of Real Estate Appraisals. [Appraisal Institute/1984]
    - Course 8-2 -Residential Valuation [Appraisal Institute/1984]
    - Course 8-3 -Standards of Professional Practice [Appraisal Institute/1985]
    - Market Data Analysis of Residential Real Estate [6/91] N.A.I.F.A.
    - Residential Report Writing [8/91] N.A.I.F.A.

- Course R61- Insp/Eval Property Physical Condition [NYU 11/2004]
- Course x62- Ethics/ Standards USPAP [NYU 11/2004]

## PROFESSIONAL AFFILIATIONS
- Member, American Society of Appraisers [ASA]
- Member, Appraiser's Guild of the Office and Professional Employees International Union/OPEIU/AFL-CIO

## REFERENCES AVAILABLE UPON REQUEST

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

In Re:                                          Case No.: 10-15981 Scc

Nathaniel Ajunwa and Regina Ajunwa

                        Debtors                 **AFFIDAVIT OF
                                                SERVICE**

-----------------------------------------------------------------X

State of New York)
County of Queens)  SS:

Sal Asaro deposes and states under penalty of perjury:

1.      I am an adult over the age of eighteen years old.
2.      On January 11, 2011, I mailed a copy of the within a Motion to the following
listed below by first class mail:

**HONORABLE SHELLEY C. CHAPMAN**          **RENE MYATT, ESQ.**
United States Bankruptcy Judge            Attorney for Sean Hill
Alexander Hamilton Custom House           204-04 Hillside Avenue – 2nd Floor
One Bowling Green – Room 610              Hollis, New York 11423
New York, New York 10004

**JEFFREY SAPIR, ESQ.**                   **UNITED STATES TRUSTEE**
399 Knoll Wood Road – Suite 102           Southern District of New York
White Plains, New York 10603              One Bowling Green
                                          New York, New York 10004

I deposited the same in an envelope addressed to the above judges and attorney's,
postage prepaid, and left the envelope in the exclusive custody of the United States
Post Office.

Dated: January 11, 2011
        Queens, New York

                                        _____
                                        Sal Asaro

Sworn to before me this 11th
day of January 2011

_____
Notary

            GEORGE BASSIAS
    Notary Public, State of New York
            No 02BA5015445
        Qualified in Nassau County
    Commission Expires July 19, 2013

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X   CASE:  10-15981Scc

In re Nathaniel Ajunwa and Regina Ajunwa          Chapter 13

                                    Debtors

------------------------------------------------------------------X   **Motion to Convert to Chapter 7**

          **GEORGE BASSIAS, ESQ.**
          Attorney for Plaintiffs
          **Nathaniel Ajunwa and Regina Ajunwa**
          21-83 Steinway Street
          Astoria, New York 11105
          Tel. (718) 721-4441

          To
Attorney for

Service of a copy of the within                    is hereby admitted

Dated,

                    Attorney for

Sir:--Please take notice

_ NOTICE OF ENTRY

that the within is a (certified) true copy of a                    19

duly entered in the office of the clerk of the within named court on

     _ **NOTICE OF SETTLEMENT**

that an order                    of which the within is a true copy will be presented for

settlement to the **HON.**                    one of                    the judges